SOPHRONIA E. BOWARD, Respondent, v. THE BANKERS UNION OF THE WORLD, Appellant.

Kansas City Court of Appeals, May 5, 1902.

1. **Benefit Societies:** CONFLICT BETWEEN POLICY AND BY-LAWS. Where the policy conflicts with the by-laws of a benefit society the by-laws should prevail.

2. ———: POLICY: BY-LAWS: REINSTATEMENT. An assured failed to pay his July and his August dues on the first of those months as required. The by-laws gave him to the first of the next month to pay his monthly dues before his suspension took place. On the seventeenth of September he paid more than enough to discharge his July and August dues to the local secretary. The by-laws gave him sixty days from his suspension to pay his past dues and be reinstated: *Held*, the sixty days began to run from the first of August and he was entitled to reinstatement when he made the payment on the seventeenth of September, and the supreme secretary should have reinstated him.

3. ———: POWER OF: BY-LAWS: APPELLATE PRACTICE. A benefit society presumably has power to levy assessments monthly or for a part of a month, and where it is doubtful on the record whether it has exercised that power by by-laws, the appellate court will follow the ruling of the trial court.

Boward v. Bankers Union.

4. ———: INITIATION FEES: EVIDENCE. Whether the deceased member was in default for his initiation fees, is in this case immaterial.

5. ———: LOCAL SECRETARY: WHOSE AGENT. Notwithstanding the by-laws of a benefit society made the local secretaries agents of members paying him arrearages of dues and assessments, the real character of such secretary will be determined by the courts; and on the facts in this record they are *held* to be the agents of the central organization and payment to him is payment to the society.

6. ———: DEFINITIONS: GOOD HEALTH: EVIDENCE: JURY QUESTION. In a benefit certificate, the term "good health" means freedom from constitutional or hereditary diseases, and other maladies, the tendency of which is to permanently impair vitality and shorten life, and whether the deceased at the time of paying his arrearages of dues and assessments was in good· health, is a question for the jury under proper instructions.

7. **Trial and Appellate Practice:** INSTRUCTION: CHANGE OF THEORY. Where a party by his instructions fails to submit a proper theory to the jury, he can not complain. of such failure.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* · Judge.

Affirmed.

*Frank L. Weaver* and *Chas. K. Hart* for appellant.

(1) Every member of a beneficiary order is presumed to know the provisions of the by-laws of the order. Harvey v. Grand Lodge, 50 Mo. App. 472. (2) Officials and members of subordinate lodges have no right to waive any of the requirements of the by-laws of the order in so far as they affect the rights of the parent corporation. In this case the secretary of the local lodge could not, by the acceptance of the money offered by Boward, waive the requirements of the by-laws of the appellant that in order to reinstate Boward to beneficial membership the supreme secretary must act and Boward must be in good health. Pitts v. Ins. Co., 50 Am. St. Rep. 96,

and note on p. 103; Curtin v. Grand Lodge, 65 Mo. App. 294; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Chadwick v. Triple Alliance, 56 Mo. App. 463; Harvey v. Grand Lodge, 50 Mo. App. 472; Bacon Ben. Soc., 388, 434; Grand Lodge v. Jesse, 50 Ill. App. 101. (3) The act of the local secretary in accepting the money from C. F. Boward was done with the statement on his part that he could not accept the same as a payment on dues but merely as a deposit with him as the agent of the assured (Boward), for the purpose of securing the reinstatement of Boward should the supreme secretary conclude to reinstate him. Borgraefe v. Knights and Ladies of Honor, 26 Mo. App. 225. (4) The fact that Boward was sick at the time he desired to be reinstated made it impossible for him to be reinstated under the by-laws then in force, and no act of his could have made it possible for him to be so reinstated. (5) Where by the by-laws of the order it is provided that a member who has been suspended shall not be reinstated while in bad health, a payment to the secretary of a local lodge will not be sufficient to reinstate the member. Nagel v. Glassburger, 10 N. Y. Supp. 503, 32 N. Y. St. Rep. 277, cited in 3 Am. and Eng. Ency. (2 Ed.), p. 1091, note; Pitts v. Ins. Co., 50 Am. St. Rep. 96, and note on p. 103.

*Johnson & Bresnehen* and *Harry K. West* for respondent.

(1) Deceased was not in default because of his failure to furnish the certificate of good health. Siebert v. Supreme Council, 23 Mo. App. 268; Connelly v. Benevolent Society, 43 Mo. App. 283; Bacon on Benefit Societies, sec. 85; 5 Am. and Eng. Ency. of Law (2 Ed.), pp. 102, 103 and notes; Renn v. Supreme Lodge, 83 Mo. App. 442. (2) By defendant's fourth instruction the court was asked to instruct the jury, that the local secretary was the agent of the insured and not the agent of the defendant, and that the payment of the ar-

rearages to the local secretary was not binding on the defend-
ant. This is not the law. McMahon v. Supreme Tent, 151
Mo. 522; Rosencrans v. Ins. Co., 66 Mo. App. 352. (3)
In the entire record there is not a syllable of evidence that
Boward was sick or in bad health on September 17, when he
paid all arrearages to the local secretary.

BROADDUS, J.—The defendant, a mutual benefit
organization, on the twentieth day of June, 1900, issued to
Charles F. Boward, plaintiff's husband, two certificates of
insurance, for the benefit of the plaintiff, one for the sum of
$2,000, and the other for the sum of $250, to be paid to her
within sixty days after satisfactory proof of the death of said
insured. Said Charles F. Boward died on the seventeenth day
of March, 1901, and satisfactory proof of his death was duly
filed with the defendant in accordance with the terms of the
certificate, but the defendant refused to pay plaintiff the insur-
ance money on the alleged ground that the deceased had been
suspended for failure to pay the monthly dues to the defend-
ant, as provided by the contract, and was at the time of his
death suspended from the benefits of the defendant's order.

By the terms of the certificate, all the by-laws as well
as the application for a certificate, with the certificate of the
medical examiner, are made a part of the contract of insur-
ance. On the back of each of these policies there is a state-
ment that, "it is agreed by and between the parties to this
contract that should any member fail to pay any premium,
dues or charges upon said member, as required by the consti-
tution and by-laws of the union promptly and when due, such
membership and all benefits under this policy shall thereupon
cease." Under said by-laws each member stands to owe on
the first day of each month what is known as a monthly due,
which is also payable on said day, for the non-payment of
which, however, a member does not lose his standing or forfeit

his rights if the same is paid by him on or before the first day of the succeeding month.

The facts in the case are that the deceased did not pay his dues for the month of July, or the succeeding month of August, and that, therefore, by the terms of the order, he stood suspended.    Under defendant's by-laws, "Any member suspended for non-payment of premiums or dues may be reinstated by the supreme secretary, if in good health and not engaged in any of the prohibited occupations, by payment of all arrearages of every kind within sixty days from the date of suspension."    It is conceded that the deceased stood suspended on and after the first day of August, 1900, for the non-payment of his dues for the month of July preceding.    On the seventeenth day of September following he paid to the local secretary of the organization of Brookfield, Missouri, of which he was a member, the sum of four dollars to apply on his dues, which was more than sufficient to discharge the dues for the months of July and August.    The local secretary did not send the money so paid him to the principal organization, but notified the supreme secretary thereof of the payment to him. On the seventh day of October, 1900, the said supreme secretary wrote the secretary of the local lodge that he would not receive the money and reinstate the deceased, unless he would furnish a certificate of good health by some reputable physician.    This the insured could not do, as he was sick at that time, therefore at his death, formally, at least, he was suspended from the benefits of the association.

The plaintiff claims that notwithstanding the supreme secretary refused to receive the money paid to the local secretary and refused to reinstate the deceased, he was entitled to be so reinstated, and in the eye of the law under his contract he was legally a member, and that under said by-laws the deceased was entitled to be reinstated, if within sixty days, if in good health, he paid all arrearages of every kind due to the organization.

Boward v. Bankers Union.

The defendant's by-laws and the terms of the policies in suit are in conflict in one respect, viz.:   The time when a member becomes suspended for dereliction.  The second clause on the back of the certificates is to the effect that when a member fails to pay his monthly charges when due, his membership shall thereupon cease, while one of its by-laws provides that the regular monthly dues are payable on the first day of each month, and that any member failing to pay these dues on or before the first day of the following month shall stand suspended, and during such suspension his benefit certificate shall be null and void.  These charges due on the first day of each month are, under the terms of the policy, to be paid on that day of the month or the member stands suspended, and under said by-laws he does not stand suspended until the first day of the succeeding month.  If the deceased stood suspended on the first day of July, by reason of the non-payment of his dues on that day, he was not entitled to reinstatement without a certificate of health because of the payment made by him on the seventeenth day of September, for the reason that the sixty days time had expired on the first day of said month.  But if the by-law is to govern, and he stood suspended only from the first day of August for non-payment of July dues, he was entitled to reinstatement for the sixty days would not expire until the first day of October following. It is for this court to say which shall govern—the condition on the back of the policy, or the by-law in question—for both are made equally a part of each policy.  We are clearly of the opinion that the by-law should control, for the reason that it was not competent for the defendant to impose conditions in its contracts that are in violation of its by-laws.  We think this position needs no argument to support it, for it would be against public policy and all reason to allow a corporation to contract in violation of its own by-laws.

It was the duty, therefore, of the defendant's supreme

secretary to have reinstated the deceased upon the payment to the secretary of the local lodge of his arrearages, and he was not authorized to require of him a certificate of good health on the seventh day of October. The condition of deceased's health on the seventeenth day of September, when he deposited with the local secretary money for his past dues, was the only legitimate matter of inquiry. The contention, therefore, of the defendant, that the insured, in order to be reinstated, should have complied with the by-law that required a member who had been suspended to produce a certificate of good health from the physician of the local lodge, is not sustained by the proof, for said by-law applied to cases only where the member had been suspended for more than sixty days.

.But defendant claims that deceased was in arrearage for dues for the fractional part of the month of June, and that it offered evidence to prove that such was the case, but that the court rejected the offer. The objection made by the plaintiff's counsel to this evidence was that the by-laws of the defendant offered in evidence provides for only monthly assessments, and not for a fractional part of a month, and that these assessments are always made on the first day of the month. The by-law regulating dues provides that "On the first day of each month the regular monthly dues and premiums are due and payable from each member of the order." There is no other by-law found in the record that makes any other or different provision. The trial court held that as there was no authority conferred upon defendant to assess other than monthly dues, it could not assess dues upon its members for a fractional part of a month. The defendant's charter is not before us, as it is not given in the record, and we are at a loss to know the nature and extent of its powers and duties, but we presume from the nature of its business that its very existence depended upon authority to assess and collect dues from its members. If the power is conceded that it may assess

and collect dues, then the question raised by the record was not a want of power, but a failure to exercise such power to its full extent, for it would be idle to say that defendant, having the power to assess and collect dues from its members, did not have the power to assess and collect for a part as well as the whole of a month. But the existence of the power and its exercise are different things. If the charter of the defendant provides that in the management of business affairs it shall be governed by certain by-laws, then it must act by and through such by-laws. But as we do not know what defendant's charter contains, and finding no by-law authorizing fractional monthly assessment against members of the organization, we must coincide with the ruling of the trial judge upon the point involved.

The defendant further contends that the deceased was in default in not paying the premium and fees necessary to be paid in advance before he could become a member of the lodge. On the trial the following question was put to the local secretary, L. N. Marseilles. "Q. Can you tell the amount which was due from Mr. Boward on account of his initiation fees?" To this question the plaintiff's counsel objected, and the objection was sustained by the court. This was all the effort made to prove that the deceased was in arrearage in that respect. The objection was properly sustained, for the question presumed that there was something due for initiation fees, of which there had been no proof.

The secretary, Marseilles, to whom the deceased paid the four dollars on September 17, says he did not receive the money as agent for the company, but as agent for the insured, consequently defendant contends that it was not a payment to it. It is true the by-laws of the defendant provide that a payment by a suspended member to an officer of the association constitutes such officer the agent of the member and not

Vol 94 app—29

of the defendant.    The evidence was that the secretary at the time he accepted the money from the deceased told him that he accepted it as his agent and not as agent of the company.    In Roscerans v. Ins. Co., 66 Mo. App. 352, the court held that, where a policy stipulated that the person who applied for insurance should be the agent of the assured and not of the assurer, notwithstanding such stipulation the courts would decide as a question of law on the facts whose agent such person was; and it was further remarked that "the courts have invariably repudiated all efforts by insurance companies to bind them by such provision."    In McMahon v. Maccabees, 151 Mo. 522, it was held that "a subordinate society and its officers are not made the agents of the insured by the fact that the by-laws of the order declare them as such;" that, "the law determines whose agent one is, from the source of his appointment and the nature of the duties he is appointed to perform." Under the by-laws of the order, it was the duty of the secretary of the local lodge to receive dues from the members and transmit them to the head organization.    There was no other agent in the State, the defendant being a foreign corporation, to whom the assured could make payment.    As a matter of fact, defendant's by-laws provide that the secretaries of the local lodges are to accept and receipt for money from suspended members, but in doing so they are to be considered as merely acting for such members.

It seems to us that the said by-law providing for the secretaries of the local lodges to receive dues from suspended members to be forwarded to the supreme lodge, was such a designation of the agency as would authorize the courts, as a matter of law, to hold them as agents of the insurer, notwithstanding the further recitation that they were merely the acting agents of such members.    Otherwise why mention such secretaries as any other persons would have answered for the purpose just as well?    The answer is not hard to find, for it is

evident that the defendant's policy was to have such business in the hands of its own agents exclusively. Under its by-laws it could have refused to receive moneys from any other source. In fact there was no other source from whence dues could authoritatively reach the said supreme lodge. The trial court was justified in holding, as a matter of law, that a payment to the local secretary was a payment to the defendant.

It is, however, contended that defendant's demurrer to the evidence should have been sustained, because it was indisputably shown that the insured died while he was a suspended member. This is true so far as the act of the defendant was concerned, but if he was entitled to be reinstated under the by-laws of the defendant, the law will treat him as having been so reinstated. This is elementary law.

It is further contended by the defendant that the evidence showed that the deceased was not in good health at the time he paid his arrearages to the local secretary on the seventeenth day of September. The only witness who testified as to that matter was the wife of the insured. On cross-examination she stated as follows: "My husband was taken sick on the first day of October, 1900. Q. When did your husband quit work on the railroad? A. Well, he laid off on Friday, the fourteenth day of September. Q. On account of sickness? A. Well, he had a bad cold, and he thought he would lay off and take a rest for a few days. Q. What was his death caused by? A. The attending physician said it was bronchial pneumonia. He did not return to work after the fourteenth of September." The defendant's argument is, that upon this evidence the court should have instructed the jury as a matter of law that the deceased was not in good health as contemplated by the policies, and, therefore, not entitled to recover.

This brings us to the question, what is meant by the words "good health," as used in the said policies. It is not to be

construed as meaning that any trival ailment would prevent the suspended member from claiming that he was in good health, for otherwise he would have to show that he was in perfect health. Life insurance companies would do little or no business if such a construction should obtain. The term should, therefore, imply that meaning, which is usually attached to it by such companies, viz.: freedom from constitutional or hereditary diseases, and such other maladies, the tendency of which is to permanently impair vitality and shorten life. It was, therefore, not a question of law, but one of fact, to be submitted to the jury upon a proper instruction defining the term. The mere fact that the deceased had a cold did not authorize the court to tell the jury for that reason plaintiff could not recover. A cold may or may not be serious in its effects. Its intensity and probable permanent or serious effect upon the individual would be the test.

But this issue was not submitted to the jury by instruction, as the court was not asked to do so. It seems that the parties tried the case mainly upon the theory of whether or not the payment by deceased of his arrearages to the local secretary was a payment to the defendant. All the instructions given on behalf of the plaintiff are in harmony with this opinion, while those refused on the part of the defendant being predicated upon a contrary theory were properly refused. The cause is therefore affirmed. All concur.