## Sun Life Assurance Co. of Canada v. Wiley.

(Decided Jan. 15, 1935.)

(As Extended on Denial of Rehearing March 19, 1935.)

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

WILEY C. MARSHALL and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The Sun Life Assurance Company of Canada issued to John C. Wiley, a resident of Franklin county, Ky., two policies of life insurance. Each provides for a waiver of premiums and a monthly income of 1 per cent. of the face amount upon his becoming totally and permanently disabled. One polciy is for $10,000 and the other for $5,000. Asserting he was totally and permanently disabled within the meaning of these terms as they are used in the policy, in an action on the policies in the Franklin circuit court he recovered a judgment January 18, 1933, for $1,300. In its brief the Sun Life presents no criticism of the judgment on the $5,000 policy. It confines its grounds of reversal to so much of the judgment as amounts to 1 per cent. of the face of the $10,000 policy. Therefore we shall confine our consideration of the case to so much of the judgment as amounts to 1 per cent. of this policy.

A summary of the grounds of reversal is, the policy lapsed for the assured's failure to pay the premium due October 11, 1931, and the policy was not thereafter reinstated during his "good health"; Wiley did not furnish proof before the payment of the premium due April 11, 1932; the policy lapsed on April 11, 1932; the trial court erroneously defined the term "total disability."

A correct disposition of the first two grounds requires a review of the facts.

George H. Poe was the agent of the Sun Life in charge of its business in Franklin county. He witnessed and accepted Wiley's application for the $10,000 policy, received the premiums on it, and tranmitted the same to the Sun Life. The policy provides:

"All premiums are payable in advance at the head office of the company or to an agent thereof, upon delivery of a receipt signed by either the President or Secretary of the Company and countersigned by the said Agent." "No person, except the President, Vice President, Actuary ior Secretary, has

power to alter this contract in any way. No payment made to any person, except in exchange for the company's official receipt will be recognized."

The agreed premium was $248.28, payable on the 11th day of January, 1931, and a like amount half yearly thereafter on the 11th days of July and January in every year during the continuance of the policy. Later, in July, 1931, the premium was by agreement of the parties payable quarterly, or $125.50 on the 11th days of January, April, July, and October. There is no dispute repecting the payment of the premiums prior to October 11, 1931. Wiley deposed that he paid Poe $125.50 on November 9th or 10th, the premium due October 11, 1931. The policy contains a grace clause of one month. The October premium, if paid as asserted by Wiley on November 9th or 10th, was within this grace period, and consequently the policy did not lapse untl 30 days after October 11, 1931. At the time he paid this premium, he claims, Virgil Burnett and Francis Wiley were present. They corroborate him by the statement they were present and witnessed the payment of the premium by him to Poe and heard Poe assure him "his insurance would be all right until after the first of the year 1932," and that he would see that "the company" sent him a certificate to show that he had paid "the premium." Poe denies the October premimum was paid to him in November, and asserts that it was not paid until December 24, 1931, at which time he claims "Wiley made a request for reinstatement."

Poe is corroborated by the signed request for the reinstatement of the policy bearing date December 24, 1931, and by a duplicate of a deposit slip, dated December 26th, showing he deposited Wiley's premium in the Capital Trust Company, Frankfort, Ky., on that date. Acting on Wiley's written request for reinstatement of the policy, the company reinstated it January 12, 1932. Between the date of the request for reinstatement and the act of the company in reinstating it Wiley sustained an injury producing total disability, and consequently was not in "good health" at the time of the reinstatement on January 12, 1932. Wiley failed to pay the premium due April 11, 1932, and the Sun Life insists the policy lapsed on that date. He furnished to the Sun Life proof of disability on April 30, 1932, or within the days' grace allowed by a clause of the policy.

On these facts and the provisions of the policy, the Sun Life contends the policy lapsed on October 11, 1931, and was not thereafter reinstated while Wiley was in "good health"; also it lapsed on Aprl 11, 1932, and, since he did not furnish proof "before default in the payment of the premium," its liability for the benefits of the policy never accrued.

It should be admitted that the conflcting evidence as to the payment on November 9th or 10th of the premium due October 11, 1931, made an issue for the jury, and it was its province to accept on this issue the testimony in behalf of Wiley or that in favor of the Sun Life. To avert the consequences of the evidence in favor of Wiley as to this issue, the Sun Life relies upon the provision of the policy that "no payment made to any person, except in exchange for the company's official receipt, will be recognized." It is argued this language of the policy forbids the recognizing the payment on November 9th or 10th of the October premium as testified to by Wiley. In support thereof, there is cited to us New York Life Ins. Co. v. Duff's Adm'r, 207 Ky. 800, 270 S. W. 51; Commonwealth Life Ins. Co. v. Vanhoose, 208 Ky. 741, 271 S. W. 1062; Prudential Ins. Co. v. Hodge's Adm'x, 232 Ky. 44, 22 S. W. (2d) 435; Metropolitan Life Ins. Co. v. Taylor's Adm'r, 219 Ky. 549, 293 S. W. 1061; Western & Southern Life Ins. Co. v. Carroll's Adm'r, 243 Ky. 48, 47 S. W. (2d) 940.

The facts in those cases are distinguishable from those in the present one. The receipt for the October premium was in January, 1932, duly executed and delivered by the Sun Life to Wiley. The conflict in the evidence of the parties only concerns the date of payment of the October premium.

Explanatory of his signing the request for the reinstatement of the policy, Wiley, asserting that he had paid the October premium on the 9th or 10th of November, states that the request was not read to him and that he had been accustomed to signing such papers pertaining to the insurance as Poe requested, and at the time he signed the request Poe explained that the purpose of having it signed was, "The rule required that it be done every year for the insurance." Poe's explanation of his signing it is that the October premium was paid on the 24th day of December; the policy had lapsed, and it was necessary for Wiley to sign the

request for the reinstatement to continue the policies, and this was the reason of his producing it to Wiley and causing him to sign it.

The jury was justified in believing that Wiley was willing to comply with the request of Poe to sign the reinstatement to keep the insurance in force, and that in doing so he complied with Poe's direction in ignorance and in the belief that a reinstatement was necessary, though he had paid the October premium on the 9th or 10th of November. Under the circumstances, the mere fact that he signed the application for a reinstatement is not such a recognition of the lapse as to estop him from showing as a matter of fact that no lapse had occurred. George Washington Life Ins. Co. v. Norcross, 178 Ky. 383, 198 S. W. 1156.

It was the province of the jury to accept or reject the explanation of either Wiley or Poe respecting the execution and delivery of the request for the reinstatement of the policy as well as their respective statements of the date of the payment of the October premium. We are not authorized to substitute our judgment as to these questions for the verdict of the jury nor to disturb its finding thereon.

It may be added that, although the policy provided "no payment made to any person, except in exchange for the company's official receipt will be recognized," the company by and through its agent, Poe, who was in the actual control and management of the policy involved, was authorized to waive this provision of the policy, even though the receipt for the October premium had not later been signed by the proper official of the Sun Life and delivered to Wiley. Section 633, Kentucky Statutes; General Accident, Fire & Life Corp. v. Lee, 165 Ky. 710, 178 S. W. 1025; North American Acc. Ins. Co. v. Plummer, 176A-466. It is a traditional rule that:

> "The power to modify or rescind a preexisiting agreement is coextensive with the power to initiate it; either is an incident of contractual capacity. John King Co. v. L. & N. R. Co., 131 Ky. 46, 114 S. W. 308; Homire v. Stratton & Terstegge Co., 157 Ky. 822, 164 S. W. 67; Murray v. Boyd, 165 Ky. 625, 177 S. W. 468; Wallace v. Cook, 190 Ky. 262, 227 S. W. 279; Covington & Anderson v. Mel-

vin, 197 Ky. 573, 247 S. W. 714; Groce v. P. B. Yates M. Co. (Tex. Com. App.) 288 S. W. 161. This rule prevails, though the contract recites that no modification shall be made except in writing. Home Ins. Co. v. Gaddis, 3 Ky. Law Rep. 159; Continental Ins. Co. of City of N. Y. v. Simpson, 220 Ky. 167, 294 S. W. 1048.''

Vinaird v. Bodkins' Adm'x, 254 Ky. 841, 72 S. W. (2d) 707, 711.

The argument of the Sun Life that the policy lapsed on April 11th ''and since Wiley did not furnish proof 'before default in the payment of the premium,' liability for the benefits'' never accrued, overlooks the clause of the policy allowing Wiley ''a grace of one month (not less than 30 days) after the payment of all premiums after the first, without any charge, during which time the policy will continue in force.'' See Metropolitan Life Ins. Co. v. Carroll, Adm'r, 209 Ky. 522, 273 S. W. 54; Fidelity Mutual Life Ins. Co. v. Gardner's Adm'r, 233 Ky. 88, 25 S. W. (2d) 69; Ætna Life Ins. Co. v. Palmer, 159 Ga. 371, 125 S. E. 829; Ætna Life Ins. Co. v. Wimberly, 102 Tex. 46, 112 S. W. 1038, 23 L. R. A. (N. S.) 759, 132 Am. St. Rep. 852; McMaster v. N. Y. Life Ins. Co., 183 U. S. 25, 26, 22 S. Ct. 10, 46 L. Ed. 64; Gottleib v. Mutual Life Ins. Co., 225 Pa. 102, 73 A. 1057, 133 Am. St. Rep. 856; Cilek v. N. Y. Life Ins. Co., 97 Neb. 56, 149 N. W. 49, 1071; Landrigan v. Mo. State Life Ins. Co., 211 Mo. App. 89, 245 S. W. 382; 6 Supp. Cooley's Briefs on Insurance, 799; Life Ins. Co. of Va. v. Williams, 48 Ga. App. 10, 172 S. E. 101; Minnesota Mut. Life Ins. Co. v. Marshall (C. C. A.) 29 F. (2d) 977, 978.

The rule in respect to forfeiture that, if a policy of insurance is so framed as to be fairly open to such a construction, that view should be adopted, if possible, which will sustain, rather than forfeit, the contract, is applicable in the present case. Tested by this rule, Wiley's policy could not be forfeited during the month of grace secured by the contract of insurance, for the premium was not, within the meaning of the policy, in default on the 30th day of April, the day on which the Sun Life received the proof of disability.

Again we are presented with the criticism of the definition of the term ''total disability'' as it has often

been defined by this court. The language of the instruction, of which complaint is made, is "from doing or performing practically or substantially any of the material, substantial and important acts customarily performed by him in his business of farming." This instruction seems to be our language in Columbia Casualty Co. v. McHargue, 246 Ky. 93, 54 S. W. (2d) 617.

In Prudential Ins. Co. of America v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, which was decided after the, trial of the pending case, we reviewed our former opinions defining the words "total diability," as they are used in the policy here under review. The meaning of the term "total disability," as it is defined in the Harris Case, is no longer controversial in this court. And though the instruction in the pending case technically fails to meet our definition as it is stated in the Harris Case, the evidence so abundantly establishes Wiley's total permanent disability, we are impelled to declare the given instruction was not prejudicial to the substantial rights of the insurance company, such as to authorize a reversal.

Perceiving no error prejudicial to the substantial rights of the Sun Life, the judgment is affirmed.